IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARRYL WALLACE, #323687            *
          Plaintiff,
v.                                  *   CIVIL ACTION NO.  AW-09-819

STATE OF MARYLAND, et al.          *
          Defendants.
                                 ***

## **MEMORANDUM**

I.    PROCEDURAL HISTORY

      In filing this 42 U.S.C. § 1983 complaint for injunctive relief on or about April 1, 2009, Plaintiff, who is confined at the North Branch Correctional Institution ("NBCI"), alleges that on or about March 10, 2009, Defendants attempted to "kill" him by applying an excessive amount of a chemical agent while he was in handcuffs and then placed a spit mask over his head.  Paper No. 1. He also claims that he was punched in the face, kicked in the stomach, tackled to the ground, and stomped in the back while restrained in handcuffs.  Plaintiff contends that there was a third wave of assault when he was subsequently carried into the housing unit and slammed to the floor of the staircase and kicked.  *Id*.  He maintains that he was denied medical treatment.

      Plaintiff further asserts that he has been subject to threatening remarks, harassment, and the deprivation of showers and recreation in retaliation for his filing a "statement of abuse" with prison agency administrators.  He claims that he has been denied administrative remedy forms to exhaust his grievances.

      The original Complaint additionally claims that on March 27, 2009, correctional officers entered Plaintiff's cell, assaulted him, extracted him from his cell and placed him in an isolation cell

without a mattress, clothing, food, running water, and toilet paper. He asserts that his property, including his law books and "legal materials," were removed from his cell.

On June 24, 2009, Plaintiff amended his Complaint to allege that on April 21, 2009, Defendant Cross applied a chemical agent. He also complains that other officers are sitting in on his confidential counseling sessions and using a "leash" and leg irons as restraints, which caused cuts and bruises to his ankle. Paper No. 14.

## II. Dispositive Filings

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which shall be treated as a summary judgment motion. Paper No. 22. As of the within signature date, no Opposition has been filed by Plaintiff. The case is ready for the court's consideration. Oral hearing is not deemed necessary. *See* Local Rule 105.6. (D. Md. Jan. 2008).

## III. Eighth Amendment Standards

Plaintiff has raised several constitutional claims respecting excessive force, verbal threats, harassment and retaliation, property loss, conditions of confinement, and denial of access to the administrative remedy procedure ("ARP") process. Each claim shall be examined *seriatim*.

### A. Excessive Force

Plaintiff claims that he was subject to unnecessary and excessive force by NBCI officers on more than one occasion. In response, Defendants offer the following facts:

On March 10, 2009, at approximately 6:50 p.m. Plaintiff was escorted to outside recreation cages of NBCI Housing Unit #1 Segregation. Paper No. 22. Once placed in the cage, he refused to have his handcuffs removed. Plaintiff subsequently agreed to have his handcuffs removed but grabbed Sgt. Thomas by his left arm with both hands and pulled Thomas's hand through the slot.

Plaintiff was ordered to cease his actions but did not comply and continued to pull Thomas into the slot.  At that juncture Sgt. Cross applied a short burst of pepper spray to Plaintiff's face.  Plaintiff released Sgt. Thomas's hand and ran to the back left corner of the recreation cage.  Sgt. Cross ordered Plaintiff to come to the door of the recreation cage so he could be escorted to the medical department.  Plaintiff refused using profane language and indicating that he could not see to get to the door.  At that point, four officers entered the recreation cage.  Plaintiff, however, kicked one of the officers in the left leg and was taken to the floor.   Two other officers arrived and Plaintiff was subdued and carried to the medical in the housing unit to receive care for his pepper spray exposure.[1]  He was seen by Nurse Rachael Warnick who observed no signs of injury and noted that Plaintiff denied injury, his vital signed were normal, and he was able to walk without difficulty to the shower.  Sgt. Thomas received several abrasions and contusions to his left arm and Correctional Officer Rodeheaver was kicked in the left thigh.    Photographs were taken of Plaintiff, who received two infractions, was placed on staff alert, and assigned to administrative segregation pending adjustment.  Plaintiff received an aggregate 730 days of disciplinary segregation as to this incident.[2]

On March 26, 2009, several officers reported to Plaintiff's cell.  He was handcuffed through the slot and the door was opened so that he could be escorted by officers, including Sgt. Speir, off the tier wing to be interviewed with regard to an administrative remedy.    Defendants' records allege that Plaintiff was somehow able to slip out of his right handcuff and punched Sgt. Speir in the nose with a closed fist.  He was taken to his bunk by officers, but resisted attempts to re-apply the

---

[1] According to the record at least one officer indicated that a spit mask was placed on Plaintiff when he arrived at the medical unit.  Other officers could not remember whether a spit mask was utilized.

[2] Defendants note that as of August 5, 2009, Plaintiff had received a total of 61 infractions since the beginning of his Division of Correction confinement on October 28, 2004.

handcuff to his right wrist. He was then escorted to a holding cell to await medical evaluation. Nurse Steven Bray noted a small abrasion above Plaintiff's left eye with no bleeding or vision problems. Plaintiff voiced subjective complaints of right shoulder pain. No signs of injury or redness were noted and Plaintiff was photographed. Plaintiff was escorted to a contingency cell by Officers Walker and Frantz where Plaintiff was strip searched and secured in the cell without further incident. He remained on staff alert. Sgt. Speir was taken to a local hospital for evaluation for a swollen upper lip.[3]

Approximately 30 minutes after the March 26, 2009 incident Plaintiff's cell was searched. Officers recovered a large paper clip fashioned into a lock pick with a handle wrapped in paper and also found a shaving razor inside a box with envelopes. Plaintiff refused to make a statement. He received two notices of infraction and was found guilty of assaulting staff. He received an additional 365 days of disciplinary segregation and an indefinite suspension of visits.

On April 21, 2009, Plaintiff refused several direct orders to allow them to place leg irons on him after he exited the shower. Sgt. Cross responded and explained to plaintiff that it is procedure to have him kneel down to have leg irons applied. He refused to comply. Cross applied a burst of pepper spray to his facial area. Plaintiff nonetheless remained non-compliant and had to be forcibly made to kneel down at which time leg irons were applied. He was escorted to the housing unit's medical room for evaluation of pepper spray exposure. Plaintiff refused to allow Nurse Windle to wash the pepper spray from his face and eyes, saying that he wanted a shower. He was escorted to

---

[3] On March 31, 2009, Sgt. Speir made an application for a statement of charges against Plaintiff in the state court. A criminal summons was issued for second degree assault and second degree assault of a Division of Correction employee. Plaintiff was found guilty and on July 24, 2009, received an additional year of confinement to run consecutive to his current sentence.

4

the shower and photographs were taken. Plaintiff was subsequently escorted to his cell without further incident.

Plaintiff was cited with an infraction for the April 21, 2009 incident and placed on administrative segregation pending adjustment. For the safety of staff, a decision was made that Plaintiff wear leg irons during escorts. Defendants argue that at some point after the April 21, 2009 incident Plaintiff acknowledged his combative behavior and indicated that he wanted to be removed from the tether and leg iron restrictions. It was explained to him that his non-compliant behavior would only prolong the restriction.

According to records verified by John Sindy, an NBCI case management specialist, during Plaintiff's February 2009 to May 2009 segregation assignment he frequently refused showers, recreation, medication, and meals. As of July 31, 2009, Plaintiff's mandatory release date is September 28, 2012. His current disciplinary segregation sentence, however, is not to expire until December 22, 2020.

Several correctional officers from all three NBCI shifts who are assigned to Plaintiff's housing unit affirm under oath that they have never denied Plaintiff's request for administrative remedy forms nor has Plaintiff informed them that he is in fear of his safety from other correctional officers in the housing unit.

A claim of excessive force raised by a prison inmate against a correctional officer, such as that alleged in the case *sub judice*, involves analysis of both objective and subjective elements. *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).  The objective element is analyzed to determine whether the officers' actions were harmful enough to offend contemporary standards of decency.  *See Hudson*, 503 U.S. at 8. Factors which are pertinent to this inquiry include the extent of injuries suffered by the inmate, the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response.  *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321.  While the inmate's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used.  *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[4]

In this circuit the use of pepper spray or tear gas in correctional facilities is carefully scrutinized because of their "inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996). When reviewing a claim that the use of pepper spray or mace constituted excessive force, "[t]he question of liability turns upon the circumstances in which the mace was used." *Justice v. Dennis,* 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds,* 490 U.S. 1087 (1989).

---

[4] When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley*, 134 F.3d at 634; *Riley v. Dolton*, 115 F.3d 1159, 1168 (4th Cir.); *Norman*, 25 F.3d at 1264.

Accordingly, although it is not *per se* unconstitutional for guards to apply pepper spray at inmates confined in their cells, it is necessary to examine the totality of the circumstances, including the provocation, the amount of pepper spray used, and the purposes for which the pepper spray is used to determine the validity of the use of the gas in the prison environment. *Id.*

As correctly observed by Defendants, Plaintiff's actions regarding the incidents in question interfered with the officers' ability to follow necessary procedures involving disciplinary segregation, recreation, and escort. Plaintiff's recalcitrant behavior did not allow officers to place him in restraints. Due to Plaintiff's continued non-compliance with direct orders and physically violent responses, short bursts of pepper spray were applied and Plaintiff had to be physically taken to the floor. These were reasoned and spontaneous responses to the situations presented and were made in a good-faith effort to restore discipline. Plaintiff was given immediate access to a shower and/or medical treatment for the exposure of the chemical agent to his facial area and the minor abrasions and cuts he experienced from the minimal force used. According to the record presented to the court, Plaintiff's injuries were minimal and temporary. Given the totality of circumstances, the use of force applied here was reasonable.

    B.  Verbal Threats, Harassment and Retaliation

Plaintiff claims that NBCI correctional officers verbally threatened him, subjected him to harassment, and acted in reprisal for his filing a "statement of abuse" with the Office of the Secretary of the Department of Public Safety and Correctional Services.

Verbal harassment or threats are not actionable under § 1983. *See Barney v. Pulsipher*, 143 F.3d 1299, 1310 n. 11 (10th Cir. 1998); *accord Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D. N.Y. 1998) ("verbal harassment or profanity alone, 'unaccompanied by any injury no matter how

inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right" under section 1983); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987); *Cole v. Cole*, 633 F.2d 1083, 1091 (4th Cir. 1980); *Partee v. Cook County Sheriff's Office*, 863 F.Supp. 778, 781 (N.D.Ill.1994) (inmate's "allegations of verbal threats, racial epithets, and continued harassment" failed to meet objective component of Eighth Amendment). Plaintiff's claims of harassment and threats do not constitute colorable constitutional claims and are subject to dismissal.

Moreover, while retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983, *see American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 785-86 (4th Cir. 1993), Plaintiff "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision..." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). To state a claim for retaliation under § 1983, Plaintiff must demonstrate (1) the invocation of a constitutional right; (2) Defendants' intent to retaliate against him for his exercise of that right; (3) a retaliatory adverse act; and (4) causation; *i.e.*, but for the retaliatory motive, the complained-of incident would not have occurred. *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997). There is no factual support in the record or Complaint that Defendants' actions were grounded in retaliatory animus. Rather, Plaintiff has raised the claim in a conclusory manner and the materials before the court show that Defendants had neutral-fact-based reasons for the use of force and Plaintiff's assignment to segregation.[5]

---

[5] "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

C.   Loss of Property

To the extent that Plaintiff complains that his property was removed from his cell and not returned to him, he has failed to state a claim of constitutional dimension. In the case of lost or stolen property, sufficient due process is afforded an inmate if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U. S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[6] Further, Plaintiff has failed to demonstrate how the alleged taking of his law books and legal materials denied him access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996).

D.   Conditions of Confinement

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim. *See Hudson* 503 U.S. at 9. Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the

---

[6]   Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post-deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing Plaintiff's due process claims.

unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Plaintiff has failed to rebut Defendants' records and argument to demonstrate that he experienced an extreme deprivation and a serious or significant injury from his alleged confinements on segregation/isolation. While he claims that he was denied food, showers, and recreation, the record shows that he often refused such rights and privileges. In any event, he has failed to show any physical injury as a result of the alleged conditions. No constitutional deprivation has been proven.

      E.      Access to Administrative Remedies

Plaintiff alleges that prison officials failed to make administrative remedy forms available to him. The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, under the law in this circuit, the grievance process established for Division of Correction inmates does not implicate a Fourteenth Amendment due process right. Further, Plaintiff's Complaint fails to allege that any deficiencies and improper acts associated with the ARP process have caused him injury by denying him access to courts, *e.g.,* his inability to file federal or state complaints.

## V. Conclusion

For the aforementioned reasons Defendants' court-construed motion for summary judgment is

ranted and judgment shall be entered in favor of Defendant and against Plaintiff.[7] A separate Order follows.


Date: October 14, 2009

                                                /s/
                                  Alexander Williams, Jr.
                                  United States District Judge

---

[7] Plaintiff seeks injunctive relief to be transferred out of NBCI. Under the law in this circuit, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to success on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, --- U.S. ---, 129 S.Ct. 365, 374-376 (2008). The previous Fourth Circuit balance-of-hardship test set out in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1997) is no longer to be applied when granting or denying preliminary injunctions. Rather, the standard articulated in *Winter* governs the issuance of such emergency relief. *See Real Truth About Obama, Inc. v. Federal Election Com'n,* 575 F. 3d 342, 346-47 (4th Cir. 2009). Because Plaintiff has failed to demonstrate any of the factors set out under *Winter*, injunctive relief shall be denied.